STATE of Iowa, Appellee,

v.

John Arthur WEATHERLY, Appellant.

No. 02–0904.

Supreme Court of Iowa.

April 7, 2004.

Linda Del Gallo, State Appellate Defender, and James G. Tomka, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas W. Andrews, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie Cox, Assistant County Attorney, for appellee.

CADY, Justice.

John Arthur Weatherly was convicted of conspiracy to manufacture methamphetamine in an amount greater than five grams and two counts of interference with official acts causing bodily injury. On appeal, he challenges the sufficiency of the evidence underlying his conspiracy conviction. The court of appeals determined that insufficient evidence existed to uphold the conviction and reversed the district court's judgment and sentence on that count. We granted further review and now vacate the court of appeals decision and affirm the judgment and sentence of the district court.

## I. Background Facts and Proceedings.

Early in the morning on February 12, 2002, Des Moines police officers David Smith (Smith) and Jordan Roling (Roling) were dispatched to the vicinity of the Cozy Rest Motel on the east side of Des Moines on a matter unrelated to this appeal. While outside the motel, the officers detected the distinct odor of ether, which they believed indicated the presence of a methamphetamine manufacturing operation (meth lab). Smith walked to the rear of the motel where he saw a fan blowing through an open, second-floor window. This circumstance further raised the officers' suspicions that a meth lab was being operated at the motel. After the officers completed their investigation into the matter for which they originally had been dispatched, they returned to the motel with two additional officers: Eric Hartman (Hartman) and Scott Neely (Neely).

As the officers approached the motel, they observed a man and woman walking down an attached stairwell. The man was later identified as the appellant, John Arthur Weatherly (Weatherly). The officers engaged the couple and noticed both smelled of ether. Smith asked which room the couple had come from and they indicated room thirty-seven. Smith and Hartman went upstairs to the room. As they approached the room, they again smelled ether and noticed a garbage can outside the room in which there was at least one item—a can of camping fuel—commonly associated with meth manufacturing. Upon smelling ether and seeing this item, Smith signaled to the officers below to handcuff Weatherly and the woman.

As Neely attempted to handcuff Weatherly, he slipped out of the coat he was wearing and ran from the officers. Hartman and Neely gave chase and eventually captured him. The officers returned Weatherly to the scene and searched the coat he had left behind in his attempt to escape. In one of the pockets of the coat, the officers discovered the bottom half of a twenty-ounce clear plastic pop bottle that contained a coffee filter "which smelled of ether."

At the same time Weatherly was being chased, Smith knocked on the door to room thirty-seven. A woman opened the door, and as she did, Smith was struck again by a strong ether odor. Smith entered the room and handcuffed the woman. He then saw elements of what he believed was a meth lab in plain sight. A further search of the room revealed more items commonly used to manufacture meth. Smith left the room and the vice and narcotics unit was called in. A subsequent investigation revealed that neither Weatherly nor the two women had rented room thirty-seven. Instead, another man, who was not present, had rented it.

Meanwhile, Weatherly was placed in a police car. While in the vehicle, Weatherly told Neely and Hartman that he was a "needle addict," that his addiction was why "he was doing meth," and "that he was willing to talk to anybody" but would talk to the vice and narcotics unit in particular to "give them names." He also stated that he had run from the scene because "he was using meth and he had been shooting meth" and "knew he was doing something wrong." Neither of the women arrested with Weatherly made any comments about using or manufacturing meth.

An officer from the vice and narcotics unit arrived and searched the room. He found a coffee filter in the sink; a can of starting fluid, a box of coffee filters, and the top of a twenty-ounce clear plastic pop bottle in a wastebasket; a glass jar sitting next to the wastebasket; two additional bottom halves of twenty-ounce clear plastic pop bottles; a plastic Tupperware container that held a solid white substance and a liquid; a plastic pill bottle containing salt; a capped twenty-ounce green plastic pop bottle; a piece of rubber tubing with a green cap attached; several additional coffee filters; a spoon with a white residue on it; and a small calculator. The officer also found a small baggie of marijuana in another plastic pill bottle on a bedside table and a marijuana pipe stowed between the mattress and box spring of the bed. The officers' searches of the room and Weatherly did not uncover a syringe or syringes.

Weatherly was charged by trial information with conspiracy to manufacture a controlled substance and manufacturing a controlled substance in violation of Iowa Code section 124.401(1) (2001) and two counts of interference with official acts causing bodily injury in violation of Iowa Code section 719.1(1). Testimony at trial revealed that the room contained the makings of a functioning meth lab. Additional laboratory

analyses revealed that several of the items held certain chemical compounds indicative of stages of meth production even though a final stage had not been fully completed and there was only a very small amount of usable meth found at the scene. An officer also testified that the set of items found in the motel room was unusual in light of the size of the plastic bottles found at the scene and the way in which many of the bottles had been cut and modified for use in the manufacturing process. The officer explained that most meth labs included larger, two-liter plastic pop bottles or, more often, glass bottles rather than twenty-ounce plastic pop bottles.

A jury convicted Weatherly of conspiracy to manufacture meth in an amount greater than five grams and the two counts of interference causing bodily injury. The district court sentenced Weatherly to a term not to exceed twenty-five years with a mandatory minimum sentence of one-third of the twenty-five-year term. *See* Iowa Code §§ 124.413, 902.9(1), 903.1(1)(*b*); *see also id.* § 901.10.

Weatherly appealed, claiming there was insufficient evidence to support his conspiracy conviction. He asserted the State failed to show an agreement to manufacture meth between Weatherly and another. He also claimed his trial counsel was ineffective for a number of reasons. We transferred his appeal to the court of appeals.

The court of appeals found there was insufficient evidence of a conspiracy to manufacture meth based on our opinion in *State v. Speicher*, 625 N.W.2d 738 (Iowa 2001). Because of its disposition of the conspiracy issue, the court of appeals did not reach Weatherly's ineffective assistance of counsel claims. The State sought further review, which we granted. We now vacate the court of appeals decision

and affirm the judgment and sentence of the district court.

## II. Standard of Review.

 "Because a jury verdict is binding on us when supported by substantial evidence," we review challenges to the sufficiency of the evidence underlying the verdict for correction of errors at law. *Id.* at 740. In undertaking our review, we apply several well-established principles:

> Evidence is substantial if it could convince a rational jury of a defendant's guilt beyond a reasonable doubt. In making an assessment of the sufficiency of evidence, we are obliged to view the record in the light most favorable to the State. But we must consider all the evidence in the record, not just the evidence supporting guilt.
>
> Although direct and circumstantial evidence are equally probative, the inferences to be drawn from the proof in a criminal case must "raise a fair inference of guilt as to each essential element of the crime." Evidence is not substantial if it raises only suspicion, speculation[,] or conjecture.

*Id.* at 741 (citations omitted).

## III. Conspiracy to Manufacture Meth.

 Weatherly was charged with violating the "conspiracy alternative" of Iowa Code section 124.401(1). *See State v. Casady*, 597 N.W.2d 801, 804 (Iowa 1999). To prove Weatherly conspired to manufacture meth,

> the State was required to show that (1) [Weatherly] agreed with [another] that one or both of them would manufacture or attempt to manufacture a controlled substance, in this case methamphetamine; (2) [Weatherly] entered into such an agreement with the intent to promote or facilitate the manufacture of

methamphetamine, a class "B" felony; (3) [Weatherly] or [another] committed an overt act to accomplish the manufacturing of methamphetamine; and (4) [the other], the alleged co-conspirator, was not a law enforcement agent or assisting law enforcement when the conspiracy began.

*Speicher,* 625 N.W.2d at 741. Here, as in *Speicher,* the fighting issue is whether an agreement to manufacture meth existed between Weatherly and another. *See id.* In *Speicher,* we made a number of observations on the agreement element that are applicable to this case:

[Our] [p]rior decisions have described an agreement to form a conspiracy as a "concert of free wills," "union of the minds of at least two persons," and "a mental confederation involving at least two persons." Both direct and circumstantial evidence may be used to prove such a meeting of the minds. Circumstantial evidence includes the declarations and conduct of the alleged conspirators and all reasonable inferences arising from such evidence. Importantly, an agreement need not be—and often times is not—formal and express. A tacit understanding—one "inherent in and inferred from the circumstances"—is sufficient to sustain a conspiracy conviction.

*Id.* at 741–42 (citation omitted).

Weatherly contends our opinion in *Speicher* controls his appeal and directs a conclusion that insufficient evidence existed to support his conspiracy conviction. In *Speicher,* police officers observed the defendant smoking a cigarette outside of the garage of a home owned by Kelly Page. *Id.* at 740. Police suspected the garage was being used to manufacture meth because they could smell ether around the garage. *Id.* The police subsequently observed Speicher and Page enter the garage and eventually leave together. *Id.* As the two men exited, they detected the presence of the police and ran. *Id.* After they were captured, Page gave the officers permission to search the garage. *Id.* In consenting to the search, Page stated, " 'I may as well sign [the consent-to-search form], but I want you to understand that *I* was manufacturing the meth *for my own use.*' " *Id.* (emphasis added). The search divulged "numerous devices and items used to make" meth, including "*one* air-purifying respirator and *a pair* of work gloves." *Id.* (emphasis added).

Both Page and Speicher were charged with conspiracy to manufacture meth and Speicher was later convicted after a jury trial. *Id.* We reversed his conspiracy conviction. *Id.* at 743. We determined that "substantial circumstantial proof of conspiracy ... [was] woefully missing in the record." *Id.* at 742. We observed that a rational juror could find that Speicher was in the garage where a meth lab was located, smelled of ether, and ran when made aware of the police. *Id.* We concluded, however, that these and other factors would only "permit a jury to infer from Speicher's presence in the garage that he knew Page was manufacturing methamphetamine." *Id.* at 742. No further evidence existed to show "that Speicher *agreed* with Page *to participate* in the manufacturing process." *Id.* at 742–43 (emphasis added).

The holding in *Speicher* instructs that proof of a conspiracy to manufacture meth is not established when two people are seen together at a meth lab, smell of ether, and flee after seeing the police. Additional evidence is needed to show conspiracy between the two or another person. However, *Speicher* does not control the outcome of this case simply because of the factual similarities of two persons, smelling of ether, walking from a meth lab, followed

by flight. The task in this case is to search for the existence of additional evidence, absent in *Speicher*, to support a conspiracy.

Conspiracy is an inherently fact-based crime, and a close examination of the facts and circumstances of this case reveal several additional facts not present in *Speicher*. These factors and others, including Weatherly's flight from the scene, constitute substantial evidence that he agreed with another person to manufacture meth. *Id.* at 741.

It is significant that Weatherly carried a distinctive portion of the meth lab with him as he left the motel. This fact supported an inference that he was engaged in the manufacturing of meth. Additionally, the circumstances revealed substantial evidence that Weatherly was involved with another in the manufacturing process. The single most important factor supporting a conspiracy was that another person, not Weatherly, rented the room. This is important because the activity in the room gave rise to an inference that the primary, if not sole, purpose for the room was to manufacture meth. At the time Weatherly was apprehended it was 3:45 a.m. and the meth lab was in full operation. This evidence not only supports a strong inference that the purpose of obtaining the room was to manufacture meth, but it also supports the inference that more than one person was involved in the process. Additionally, Weatherly made statements to the police that implied other persons were involved in the meth operation. The jury could find his further statement to police that he was only a "needle addict" was untrue and was made to disassociate himself as a participant in the operation. This false statement not only supports an inference of his knowledge of the meth operation, but also his participation in the meth operation

with the other persons he implied were involved.

Ultimately, each of these factors distinguishes this case from *Speicher* and provides substantial evidence that Weatherly agreed with another "to participate in the manufacturing process." *Id.* at 743. A rational jury could reach this conclusion based on the evidence presented and be convinced of Weatherly's guilt beyond a reasonable doubt. *See id.* at 740. Sufficient evidence existed to support Weatherly's conviction for conspiracy to manufacture meth.

## IV. Ineffective Assistance of Counsel.

In light of our conclusion on the sufficiency of the evidence underlying Weatherly's conspiracy conviction, it is necessary to also consider his claims of ineffective assistance of counsel. Ineffective assistance of counsel is established when a defendant shows that "(1) trial counsel failed to perform an essential duty and (2) [the defendant] was prejudiced by counsel's errors." *State v. Heuser*, 661 N.W.2d 157, 166 (Iowa 2003). "Failure to prove either of these elements is fatal to a claim of ineffective assistance." *Id.* Our analysis launches from a presumption "that trial counsel acted within the normal range of competency." *Id.* Prejudice is established by proof "that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (citation omitted). Our review of claims of ineffective assistance of counsel is de novo in light of the constitutional dimensions of the claim. *See id.* We typically preserve claims of ineffective assistance of counsel for postconviction relief, but we will consider and dispose of ineffective assistance claims on direct appeal where an adequate record exists from which to analyze a claim so as to preserve

valuable judicial resources. *State v. De-Camp*, 622 N.W.2d 290, 296 (Iowa 2001).

Weatherly claims he was provided ineffective assistance of counsel due to his trial counsel's failure to move—either before trial or in the course of the trial—to exclude evidence of the marijuana and marijuana pipe found in room thirty-seven and the failure to raise a host of constitutional challenges to Iowa Code section 901.10, under which he was sentenced.[1] Weatherly's constitutional allegations are based on the assertion that section 901.10 violates federal and state constitutional guarantees related to jury trials and prohibitions against coerced guilty pleas, self-incrimination, oppressive punishment, and cruel and unusual punishment.

In *State v. Biddle*, 652 N.W.2d 191, 199–203 (Iowa 2002), we encountered and rejected several of the same constitutional challenges to Iowa Code section 901.10 that Weatherly raises in the context of his ineffective assistance of counsel claim. Therefore, in light of *Biddle*, Weatherly was not provided ineffective assistance of counsel insofar as his counsel failed to challenge the constitutionality of Iowa Code section 901.10 on federal and state constitutional grounds related to jury trials, coerced guilty pleas, self-incrimination, or oppressive punishment. *See State v. Welch*, 507 N.W.2d 580, 584–85 (Iowa 1993). One issue that we did not fully encounter in *Biddle* is the claim that Iowa Code section 901.10 constitutes cruel and unusual punishment under both the Eighth Amendment to the federal constitution and article one, section seventeen of the Iowa Constitution. We believe this issue deserves a fuller consideration than what we can provide with the record before us, so we preserve this claim for postconviction relief proceedings. We also preserve the claim of ineffective assistance of counsel relating to the admission of the marijuana evidence at trial. An additional record is needed to determine if trial counsel's actions fell within the exercise of judgment. *See Heuser*, 661 N.W.2d at 166.

## V. Conclusion.

Sufficient evidence existed for the jury to conclude Weatherly conspired to manufacture meth. While most of Weatherly's claims of ineffective assistance of counsel are without merit, we preserve his claim related to cruel and unusual punishment and the admission of the marijuana evidence. Weatherly has not appealed his two convictions for interference with official acts. On the basis of each of these conclusions, we vacate the court of appeals decision and affirm the judgment and sentence of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

1. Weatherly also asserted that his counsel was ineffective to the extent he failed to preserve Weatherly's primary claim related to the sufficiency of the evidence underlying his conspiracy conviction. Given that his sufficiency claim was preserved, Weatherly's claim for ineffective assistance based on this ground is eliminated.